[Civ. No. 185.    Third Appellate District.—May 24, 1906.]

JOHN YARDLEY, Appellant, v. SAN JOAQUIN VALLEY BANK, SAMSON IRON WORKS and JOSEPH H. CONDY and Wife et al., Respondents.

HOMESTEAD—COMMUNITY PROPERTY—COMMINGLING OF WIFE'S FUNDS —JUDGMENT NOT A LIEN.—Where a homestead has been lawfully declared upon property purchased principally with community funds, it is immaterial whether the commingling of the wife's separate funds in the purchase of it would leave her holding a separate interest or not. A valid homestead upon community property destroys its effect as such, and takes away the husband's power of disposition thereof; and any judgment taken against him thereafter cannot become a lien upon the homestead, or any part of it.

ID.—MORTGAGES—WIFE'S SEPARATE PROPERTY—PURCHASE AND PLEDGE OF STOCK—ATTACHMENT AND SALE FOR HUSBAND'S DEBT.—An agreement, in consideration of the joining by the wife in a mortgage upon the homestead, that part of the money borrowed should be used by her in the purchase of stock in a corporation, and that such stock should be her separate property, and be pledged to secure the mortgage debt, made such stock her separate property, and it could not be attached or sold under execution for the husband's debt.

ID.—HUSBAND'S CREDITORS NOT DEFRAUDED.—The creditors of the husband could not be defrauded by said transaction. The homestead not being liable for any debts of the husband, any gift, sale or pledge of the whole, or any part thereof, to the wife, or to anyone, could not, under any circumstances, be held, as matter of fact, to be with intent to defraud any creditor of the husband.

APPEAL from a judgment of the Superior Court of San Joaquin County.    W. B. Nutter, Judge.

The facts are stated in the opinion of the court.

A. H. Carpenter, for Appellant.

R. O. Minor, for Respondent Bank.

Plummer & Dunlap, for Respondent Iron Works.

BUCKLES, J.—This action is to recover from the San Joaquin Valley bank the possession of five hundred shares of the capital stock of the Samson Iron Works, which plaintiff alleges he purchased at an execution sale on a judgment he obtained against defendant, Joseph H. Condy, which stock stands in the name of "Mrs. Joseph H. Condy," the wife of the said Joseph H. Condy, and was deposited in said bank as a security.

Judgment was for defendants, and the plaintiff appeals from said judgment.

Facts: The defendant Joseph H. Condy and his wife, Atlanta J. Condy, owned a piece of property on which they were living in Stockton and, on June 23, 1894, the wife declared a homestead on said premises, in due form, and the same was duly recorded on June 25, 1894. Ten years later, and on October 22, 1904, plaintiff recovered judgment against defendant, Joseph H. Condy, for the sum of $893.20.

On July 19, 1902, the defendants, Joseph. H. Condy and Atlanta J. Condy, duly made, executed and delivered to the defendant (bank) their promissory note for the sum of $1,200, and at the same time made, executed and delivered to said defendant (bank) a mortgage on all the homestead property. That thereupon, and as a part of the same transaction, the sum of $500 of said money so borrowed was used in the purchase of five hundred shares of the capital stock of the Samson Iron Works, which shares were purchased in the wife's name, and said shares were delivered to the said San Joaquin Valley bank also as security for the payment of said $1,200 borrowed.

On November 22, 1904, appellant took out an execution on his said judgment against the property of defendant, Joseph H. Condy, directing the sheriff to levy upon and sell all of the interest of the said Joseph H. Condy in and to said five

hundred shares of stock of the Samson Iron Works. That in due time and after due notice given, on the twenty-eighth day of November, 1904, the sheriff sold to appellant all the interest defendant, Joseph H. Condy, had in and to said five hundred shares of stock and delivered to appellant a certificate setting forth such sale. That thereupon appellant went to the said San Joaquin Valley Bank, presented the said sheriff's certificate and demanded that said bank deliver to him said five hundred shares of stock, saying he would pay whatever the bank had against the said stock. He demanded, also, that the bank assign to him the said $1,200 mortgage of the Condys and that he would pay the note or whatever was due on it. The bank refused to comply with this demand, and also refused to give him the said stock. Appellant then went to the office of the Samson Iron Works and, presenting his said sheriff's certificate of sale, demanded that said Samson Iron Works issue to him a new certificate of stock for said five hundred shares. *This* demand was not complied with.

At the time of giving the said mortgage, Mrs. Condy declined to execute the same unless the five hundred shares of stock (which had not then been issued) should be purchased for her and given to her. The negotiations for the purchase of said shares were made by Joseph H. Condy. It does not clearly appear whether Condy was to have employment in said iron works if five hundred shares of stock were taken, but the president of the corporation, J. M. Kroyer, with whom the negotiations were in part made, testified as follows: "I told him I thought there would be an opening for him shortly after we were incorporated, and after the incorporation had run for a while, it proved that there was, and he was employed about the time he took out his stock." Mr. F. B. Hubbard, the secretary of the Samson Iron Works, testified that Condy said his wife wanted the stock and that he, Condy, wanted a job there, and that was the object of getting the stock. It seems from the testimony that it was well understood by the Samson Iron Works that the stock was for Mrs. Condy. The testimony shows also, that she signed and executed the mortgage upon the promise of her husband that $500 of the $1,200 to be borrowed would be used in the purchase of five hundred shares of the capital

stock in the Samson Iron Works for her and in her name. In the negotiations with the bank for the loan the bank was not willing to loan the $1,200 with no other security than a mortgage on the homestead, but would loan the sum providing the five hundred shares of the Samson Iron Works, which the Condys had been negotiating to purchase, should be deposited also as security for the $1,200. This was agreed to, the mortgage given, the money loaned, the stock purchased and paid for by Condy out of the $1,200 and deposited in the bank as security. It appears from the testimony that the secretary in issuing the stock, though knowing it was for Mrs. Condy, inadvertently issued it in the name of Joseph H. Condy, and when Mr. Condy shortly thereafter returned the stock to him and called his attention to the fact the stock was in his name instead of his wife's name, as was the understanding, the said secretary wrote the letters ''Mrs.'' in front of the name ''Joseph H. Condy'' and Mrs. Condy went to the office of the iron works and herself placed the letters ''Mrs.'' in front of the name Joseph H. or J. H. Condy as the same was signed on the stub of the stock-book for said shares of stock. And the certificate for said five hundred shares was indorsed on the back by her, and she delivered it to the said bank in accordance with the prior agreement had with said bank. Joseph H. Condy declared he never had any interest in said stock and that in purchasing it he acted solely for his wife and the testimony bears out this assertion. The stock was deposited with the bank about July 19, 1902, and appellant recovered his said judgment against defendant Condy on October 22, 1904. We are entirely satisfied this stock and mortgage transaction was free from fraud as against the appellant or any other person. Appellant claims the property on which the homestead was declared to be community property and that the said five hundred shares of stock, having been purchased from the money borrowed on the homestead was community property, and that, therefore, the wife could not pledge, mortgage or dispose of it, and for that reason the said bank had no right in, claim to, or pledge of said stock. But we think this not tenable. The testimony shows the property, which was the homestead, was acquired in part by the joint effort of both husband and wife after their marriage, and in part

by her separate property. The undisputed testimony of husband and wife shows that when they married in 1886 the wife had seven or eight hundred dollars, and that nearly $600 of this money went into this homestead as purchase money and for improvements. The property, the homestead, was worth about $2,500 at the time of the trial. Whether the mixing up of her separate funds with the community interest would leave her holding an interest as separate property, or that it became all community property, is immaterial here. If it was community property (Civ. Code, secs. 164, 687), the moment it became a valid homestead it ceased to be community property and Joseph H. Condy ceased to have the absolute control over it as he would were it community property under section 172 of the Civil Code.

The homestead was declared and recorded years before appellant obtained his judgment and, therefore, there is nothing he could have done to make his judgment a lien on said homestead. (Code Civ. Proc., secs. 671, 690.)

It is clear that the judgment of plaintiff never became a lien upon the homestead, neither did it become a lien upon the $500 which was a part of the money borrowed on the homestead and which went to purchase the five hundred shares of stock, for no levy was ever made thereon, nor did such judgment lien ever attach to the said five hundred shares of stock unless by the levy attempted November 22, 1904.

As to the ownership of said five hundred shares of stock the court found, and the evidence of Joseph H. Condy and his wife supports such findings: "That the said defendant, Atlanta J. Condy, sued as Mrs. Joseph H. Condy, declined and refused to sign said mortgage upon said homestead property unless the stock and certificate to be purchased of the defendant, Samson Iron Works, should be her separate property purchased in her name free from any claim of ownership or interest therein by and on the part of her husband, and that said stock and certificate of stock so to be the property of the defendant, Atlanta J. Condy, sued as Mrs. Joseph H. Condy, should be issued to her." That it was thereupon agreed between the defendant Joseph H. Condy and his wife Atlanta J. Condy, sued as Mrs. Joseph H. Condy that the stock to be purchased in the Samson Iron

Works should become and be her separate property and that the certificate thereof should be taken in her name.

The court also found that this five hundred shares of stock was the separate property of the said Atlanta J. Condy. If this five hundred shares of stock was the separate property of the wife, then it was not subject to attachment for the husband's debts. (Civ. Code, sec. 171.)

The agreement of the husband was, properly stated, to give the wife $500 out of the $1,200 raised on the homestead with which he was to purchase for her five hundred shares of the capital stock of the Samson Iron Works, which was a consideration for her executing the mortgage, and so far as the appellant's interests or demands are concerned this $500 became her separate property. As the homestead was not liable for any of the debts of the husband, any gift, sale or pledge of the whole or any part thereof to the wife or to anyone could not under any circumstances be held, as a matter of fact, to be with intent to defraud appellant or any creditor. (*Wetherly* v. *Strauss,* 93 Cal. 283, [28 Pac. 1045] ; Civ. Code, sec. 3441.) The judgment of appellant was against Joseph H. Condy and not his wife, it being his debt and not hers; this five hundred shares of the capital stock in the Samson Iron Works, being her separate property, was still not liable to be subjected to appellant's judgment. (*Payne* v. *Cummings,* 146 Cal. 426, [106 Am. St. Rep. 47, 80 Pac. 620].) As we view it, there is no way possible for appellant to subject this five hundred shares of stock to the payment of this judgment.

Taking the view we have, that the five hundred shares of stock in the Samson Iron Works are the separate property of the defendant Atlanta J. Condy, wife of the judgment debtor, it becomes unnecessary to consider other questions presented by this appeal.

The findings are supported by the evidence and warrant this judgment.

Judgment affirmed.

Chipman, P. J., and McLaughlin, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 19, 1906.